IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONNA KAY NICHOLSON,          )
      Plaintiff,              )
                              )
    v.                        )    02: 09-cv-1131
                              )
MICHAEL J. ASTRUE,            )
COMMISSIONER OF SOCIAL SECURITY, )
                              )
      Defendant.              )

**MEMORANDUM OPINION AND ORDER OF COURT**

June 15, 2010

**I.    Introduction**

Plaintiff, Donna Kay Nicholson ("Plaintiff"), brought this action pursuant to 42 U.S.C. § 1383(c)(3), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") which denied her application for supplemental security income ("SSI") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383(f).

**II.    Background**

    **A.    Facts**

Plaintiff was born on November 20, 1964, and was forty-three (43) years old on the date of the decision of the Administrative Law Judge ("ALJ"). T. 17, 22. Plaintiff graduated from high school and completed one year of technical school. T. 24, 106. Plaintiff's past work experience includes employment as a nurse's aide from 1992-1993 and as a telemarketer for approximately ten months from 1997-1998. Plaintiff has not worked since September 1998. T. 24, 25, 100, 331. Plaintiff testified at her administrative hearing that she stopped working because of blood clots in her legs. T. 25. However, according to Plaintiff's disability report, she

1

stopped working due to a car accident and pregnancy. T. 100. Plaintiff made no effort to look for other employment after she ceased working. T. 25. Plaintiff's alleged onset of her disability is March 1, 2001 due to arthritis in her right hand, bad veins in her legs, depression, mitral valve disease, and neurological problems. T. 99-107.

The record reflects that Plaintiff has not engaged in substantial gainful work activity since September 1, 1998. T. 100.

B.      **Procedural History**

Plaintiff filed an application for SSI on March 10, 2006, in which she alleged total disability since March 1, 2001. T. 8. Her claim was initially denied on November 21, 2006. T. 8. Plaintiff filed a timely written request for a hearing on January 16, 2007. T. 8. An administrative hearing was held on March 11, 2008, before ALJ Norma Cannon at which Plaintiff appeared with counsel and testified. T. 20-37. Eugene A. Czuczman, an impartial vocational expert, also testified at the hearing. T. 37-44.

The ALJ rendered an unfavorable decision to Plaintiff on May 6, 2008, in which she found that Plaintiff retained the residual functional capacity to perform a significant range of light work, with restrictions[1] and, therefore, was not disabled as defined in the Act since March 10, 2006, the date of Plaintiff's application. T. 17.

The ALJ's decision became the final decision of the Commissioner on June 26, 2009, when the Appeals Council denied Plaintiff's request for review. T. 1-4.

---

[1] Specifically, the ALJ found that Plaintiff had the residual functional capacity to perform light work, except she requires a sit/stand option, within the following parameters:
"She must avoid climbing stairs, ropes or ladders, and avoid exposure to unprotected heights. She must avoid jobs that require constant use of foot pedals. The work should be unskilled namely involving routine and repetitive things. It should not require intense concentration and should only require limited contact with the public and co-workers." ALJ Decision, Finding No. 4.

2

Plaintiff filed her complaint in this Court on August 24, 2009, in which she seeks judicial review of the decision of the ALJ. The parties have filed cross-motions for summary judgment. Plaintiff alleges that the ALJ erred as a matter of law in failing to accord proper weight to the opinions of Margaret McKinley, Ph.D., who conducted a consultative psychological examination of Plaintiff in 2006, and P. Iyengar, M.D., Plaintiff's treating psychiatrist. Plaintiff further argues that the ALJ failed to accurately portray Plaintiff's physical and mental impairments in the hypothetical question posed to the vocational expert. The Commissioner contends that the decision of the ALJ should be affirmed, as it is supported by substantial evidence. The Court agrees with the Commissioner and will therefore grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.

## III. Legal Analysis

### A. <u>Standard of Review</u>

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed. 42 U.S.C. § 405(g); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "It consists of more than a mere scintilla of evidence, but less than a preponderance." *Stunkard v. Sec. of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1)

is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C. § 404.1520; *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118-19 (3d Cir. 2000) (*citing Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999)).

In order to qualify for disability benefits under the Act, an individual must demonstrate that there "exists a medically determinable basis for an impairment that prevents him or her from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987) (*quoting* 42 U.S.C. § 423(d)(1) (1982)). This may be done in two ways:

> (1) by introducing medical evidence that the claimant is disabled per se because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1 (1986). *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777; or,
>
> (2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 460 (*quoting* 42 U.S.C. § 423(d)(2)(A)).

In order to prove disability under the second method, a claimant is required to first demonstrate the existence of a medically determinable disability that precludes the claimant from returning to his or her former job. *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that the claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given the claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments that may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Bailey v. Sullivan*, 885 F.2d 52, 60 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity'"). *Id.* (*quoting* 42 U.S.C. § 423(d)(2)(c)(Supp. III 1985)).

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act at the third step of the sequential evaluation process because the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. T. 10. The ALJ found that Plaintiff was not disabled within the meaning of the Act at the fifth step of the sequential evaluation process as well. T. 11. In making this determination, the ALJ concluded that Plaintiff has the residual functional capacity to perform a significant range of light work, with restrictions, as defined in the Act. T. 11.

**B.     Discussion**

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); *Schaudeck*, 181 F.3d at 431.

Plaintiff alleges that (1) the ALJ failed to give the medical opinions of Dr. McKinley and

Dr. Iyengar controlling weight; and (2) the ALJ failed to accurately portray Plaintiff's physical and mental impairments in the hypothetical question posed to the vocational expert.

    1.    *The ALJ Properly Evaluated the Medical Evidence of Record From Dr. McKinley And Dr. Iyengar*

Plaintiff contends that the ALJ erred as a matter of law in failing to accord proper weight to the opinions of Dr. McKinley, who performed a consultative psychological evaluation of Plaintiff, and Dr. Iyengar, Plaintiff's treating psychiatrist.

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Plummer*, 186 F.3d at 429) (internal citations omitted). The ALJ must weigh conflicting medical evidence and can choose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317 Where an opinion as to disability is unaccompanied by a thorough written report, its reliability is suspect. *See Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986).

A statement given by Plaintiff's treating physician that she is disabled or not able to work "is not dispositive of the issue." *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994) (*citing Wright v. Sullivan*, 900 F.2d 675, 683 (3d. Cir. 1990)). The ALJ must review all of the medical findings and other evidence in support of the treating physician's opinion of Plaintiff's total disability, and "weigh the relative worth of a treating physician's report against the reports submitted by other physicians who have examined the claimant." *Adorno*, 40 F.3d at 48. Regardless of such medical conclusions, the determination of disability is ultimately a legal determination for the Commissioner and not a medical source. 20 C.F.R. § 404.1527(e).

Upon review of the evidence of record relating to Plaintiff's mental impairments, the ALJ determined that Plaintiff had mild restrictions in terms of activities of daily living. T. 10. Plaintiff lives with and cares for two of her children. T. 23. She gets up every day early in the morning and helps her daughter and son get ready for school. T. 26. Although Plaintiff's ex-husband and her children often help out inside and outside of the home, Plaintiff testified that when she can she washes dishes, does laundry, cooks meals, cleans the house, drives, shops, and helps her son with his homework. T. 23, 26-28.

In terms of social functioning, the ALJ found that Plaintiff has moderate difficulties. T. 11. Plaintiff reports that she does not go out and feels uncomfortable in large groups, but she is able to attend church. T. 332. T. 332, 670. In fact, two weeks prior to her administrative hearing, Plaintiff began attending church again. T. 29. She talks to her mom everyday on the phone. T. 29. She occasionally plays games with her children. T. 29.

The ALJ determined that Plaintiff has moderate difficulties regarding concentration, persistence, or pace. T. 11. Plaintiff likes to read, however she reported that she is not able to remain focused and has difficulty completing anything. T. 28, 331. Plaintiff stated that she sleeps 15 or 16 hours out of a 24-hour period. T. 34. According to Plaintiff, she has panic and anxiety attacks approximately five times a week, which are triggered by stress and confusion. T. 33. Nevertheless, the ALJ found that Plaintiff has not experienced any episodes of decomposition. T. 11. Additionally, the ALJ concluded that there exists no evidence of record that reveals that Plaintiff is unable to function independently outside of her home. T. 11.

Plaintiff was referred to Dr. Margaret McKinley for a consultative psychological evaluation on October 2, 2006. T. 329-337. According to Dr. McKinley's report, Plaintiff had 27-29 minor surgeries over the years, including surgery on her legs, breast, hernia, sinus, and

7

arm for cysts. T. 330. She has venous stasis, poor circulation, and blood clots. T. 330. Dr. McKinley opined that Plaintiff has "extreme" limitations in the ability to understand, remember, and carry out short, simple instructions, and make judgments on simple-work related decisions. T. 336. However, during the evaluation, Dr. McKinley noted that Plaintiff was "mildly anxious," but that her hygiene was good, her gait and posture were unremarkable, and she had no unusual characteristics of speech. T. 331.

Dr. McKinley diagnosed Plaintiff with depressive disorder, generalized anxiety disorder, and severe stress related chronic illness. T. 332-333. She evaluated Plaintiff's Global Assessment of Functioning (GAF) to be 45. T. 333. Dr. McKinley noted that Plaintiff's overall intellectual ability appeared to be in the average range based on her vocabulary ability and level of education. T. 331. Her abstract thought ability was consistent with her intellect, and she is capable of managing her own finances. T. 331, 333.

Dr. McKinley concluded that Plaintiff has been unable to maintain employment since 1998, and recommended that Plaintiff receive consistent ongoing psychotherapeutic treatment and medication management. T. 333. However, despite Dr. McKinley's recommendation, Plaintiff admitted that she "has never been consistent with treatment," and has been in and out of treatment ever since her suicide attempt 15 or 16 years ago. T. 329.

Contrary to Dr. McKinley's conclusion that Plaintiff is unable to work, the ALJ found that Dr. McKinley's mental status examination findings did not disclose the necessary findings to support a conclusion that Plaintiff is extremely limited in any area. T. 15. Moreover, the ALJ determined that Dr. McKinley evaluated Plaintiff in 2006, before she started taking different medication. T. 15, 329. In addition, Dr. McKinley was not Plaintiff's primary physician, and thus the ALJ found that Dr. McKinley had relied solely on one observation of Plaintiff rather

than on objective long-term observations and experiences with Plaintiff. T. 15. Furthermore, the ALJ found that Dr. McKinley's GAF score of 45 was based on her own personalized assessment and not on specific diagnostic tests. T. 15.

On November 16, 2006, Roger Glover, Ph.D., prepared a Mental Residual Functional Capacity Assessment based upon his review of the record, and found variations between Dr. McKinley's opinion and the evidence in Plaintiff's medical file. T. 348. According to Dr. Glover, Dr. McKinley's remarks contained in her report regarding Plaintiff's ability to make occupational adjustments "are not consistent with all of the medical and non-medical evidence in the claims folder." T. 348. Dr. Glover stated that some of Dr. McKinley's opinions "are viewed as an overestimate of the severity" of Plaintiff's functional restrictions, and are based "heavily on the subjective report of symptoms and limitations" given by Plaintiff. T. 348. Dr. Glover concluded that Plaintiff's "statements are found to be partially credible," and Plaintiff "is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment." T. 348.

Dr. Iyengar, Plaintiff's treating psychiatrist who sees her on a monthly basis, performed a mental status examination of Plaintiff on May 2, 2007. T. 670-672. According to Dr. Iyengar, Plaintiff is depressed most of the time and has sleep problems. T. 670. Nevertheless, during the evaluation, Plaintiff was cooperative, her speech was coherent, her thoughts were goal directed, and her mood was happy. T. 671. Dr. Iyengar noted that Plaintiff is "probably of average intelligence" and listed her GAF score as 50. T. 671. Dr. Iyengar additionally reported that Plaintiff's memory is adequate, her concentration is okay, and her insight and judgment are "fair and intact." T. 671. He diagnosed Plaintiff with panic disorder with agoraphobia, social anxiety disorder, bipolar disorder, presently on the manic side, and generalized anxiety disorder, and

adjusted Plaintiff's medication. T. 671. Approximately four months after Dr. Iyengar's examination, Plaintiff reported feeling 50% better in terms of anger and agitation. T. 693. On December 17, 2007, Plaintiff stated that she was "a lot better while on the medicine." T. 682. Dr. Iyengar opined that Plaintiff had improved 80-90%. T. 682.

Despite Plaintiff's progress, she reported later in December of 2007 that she was not good because she ran out of medicine and missed an appointment. T. 682. In January of 2008, Plaintiff felt more agitated. T. 679. She reported that she occasionally hears her name called and sees shadows, and she does not trust her ex-husband. T. 679. On February 27, 2008, Dr. Iyengar wrote on a prescription pad, "Donna is my patient and is not able to work. She has not worked in many years." T. 731.

The ALJ addressed Dr. Iyengar's reports, and found that Plaintiff had never required, nor sought more intensive psychiatric treatment. T. 15. In addition, the ALJ concluded that Dr. Iyengar's opinion of Plaintiff's disability was not supported by explanation or rationale, and was thus "purely conclusory." T. 15-16.

As for Plaintiff's physical impairments, the ALJ stated that while these impairments could reasonably produce her alleged symptoms, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her physical impairments were not credible because they were not consistent with the results of her residual functional capacity assessments. T. 14. To support this conclusion, the ALJ first noted that most of Plaintiff's surgeries occurred several years before her alleged disability onset date. T. 15. Second, although Plaintiff has mitral valve disease, an echocardiography revealed mild concentric left ventricular hypertrophy with normal left ventricular systolic function; redundant posterior mitral valve leaflet with mild prolapsed, and mild to moderate mitral regurgitation.

Third, her neurological examination revealed that she has normal speech, her cranial nerves are intact, but that she had decreased facial sensation over the right side of her face. T. 15. Fourth, much of Plaintiff's stress derived from family problems; however, it appeared that Plaintiff's history of ongoing treatment for mental issues was benefiting her. T. 15. Therefore, the ALJ concluded that the record does not support Plaintiff's alleged level of physical or mental incapacity. The Court finds that the ALJ's determinations are amply supported by substantial evidence in the record.

2. *The ALJ Properly Relied Upon A Complete Hypothetical*

Plaintiff contends that the ALJ failed to accurately portray all of her physical and mental impairments in the hypothetical question which the ALJ posed to the vocational expert.

In order to determine whether a claimant is capable of performing other substantial gainful activity that exists in significant numbers in the national economy, the ALJ may rely upon the testimony of a vocational expert ("VE"). Testimony of a VE constitutes substantial evidence for the purpose of judicial review where a hypothetical question considers all of a claimant's impairments, which are supported by the medical record. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Hypothetical questions need only include factors that are supported by objective medical evidence contained in the record. *Id*. It is not necessary for the ALJ to include facts in the hypothetical question that are supported only by a claimant's subjective testimony. *Id.*

The ALJ posed the following hypothetical to the VE at the administrative hearing in this matter:

> If you assume a hypothetical person of the claimant's age, education, background, and work experience who can do a range of light work. Needs a sit/stand option. Needs to avoid climbing stairs, ropes, ladders, or any type of climbing such as that. Also needs to avoid hazards such as dangerous moving machinery and

unprotected heights. And needs to avoid jobs where there's a need to constantly use foot pedals. Would also need an entry level job, unskilled, routine and repetitive work. Working with things as opposed to people. No intense concentration required. Limited contact with the public and co-workers. Could that hypothetical person do the claimant's prior relevant work?

T. 39.

The VE responded that the hypothetical person could not do the Plaintiff's prior relevant work. T. 39. The VE characterized Plaintiff's "prior relevant work" as patient care assistant, which is customarily recognized as a medium exertional position, and a telemarketer position which is recognized as sedentary, semi-skilled.

The ALJ then asked the VE if there were occupations at the light and sedentary level, with certain restrictions, that the hypothetical person could perform. The VE responded in the affirmative and gave a list of occupations that such hypothetical person could perform, such as inserting machine operator (light exertional, unskilled), photographic machine operator (light exertional, unskilled), cleaner polisher (light exertional, unskilled), patcher (sedentary exertional), laminator (sedentary exertional), and plastic design applier (sedentary exertional).

Counsel for Plaintiff then asked the VE the following:

Assuming the first hypothetical that the Judge gave you, but assuming that the individual would have marked limitations in ability to carry out and understand short simple instructions or detailed instructions. Would there be work available to such an individual?

T. 42.

The VE responded that there would not be work available to such an individual. T. 42.

Counsel for Plaintiff followed up with two more separate hypothetical questions, each assuming the first hypothetical situation given by the ALJ, but included additional limitations. T. 42-43. According to the VE, Plaintiff would not be able to work under any of the hypothetical questions posed by Plaintiff's counsel. T. 42-43.

The record reflects that the ALJ discounted the VE's responses to the three hypothetical questions posed by Plaintiff's attorney because the physical and mental limitations of Plaintiff, which were included in counsel's hypothetical questions, were not supported by objective medical evidence. Specifically, the first hypothetical question posed by Plaintiff's attorney asked the VE to consider that the hypothetical individual was not able to carry out and understand short simple instructions or detailed instructions. T. 42. However, according to Frank Bryan, M.D., who reviewed the record and prepared a Physical Residual Functional Capacity Assessment of Plaintiff in November of 2006, Plaintiff had exertional limitations, but no postural manipulative, visual, communicative, or environmental limitations. T. 338-345.

The second hypothetical question posed by Plaintiff's attorney asked the VE to consider that the hypothetical individual was not able to interact appropriately with the public, supervisors, and co-workers, and would have marked limitations in the ability to respond to work pressures in a usual work setting, or to changes in a routine work setting. T. 42-43. Dr. Glover, however, had reported that Plaintiff "remains capable of understanding and remembering instructions, concentrating, interacting appropriately with people and adapting to changing activities within the workplace." T. 348. Additionally, Dr. Glover stated that Plaintiff "would be able to maintain regular attendance and be punctual." T. 348.

Lastly, the third hypothetical question posed by Plaintiff's attorney asked the VE to take into account that the hypothetical individual would be off task due to problems with anxiety or depression for a third of the workday. R. 43. However, the ALJ found that the record simply did not support Plaintiff's claim that she is not able to remain focused for a third of the workday.

The Court finds and rules that the ALJ properly accepted the VE's responses to the ALJ's second hypothetical, which as discussed above, accurately represented Plaintiff's age,

background, and residual functional capacity based on the objective medical evidence. Accordingly, the Court finds that the determination of the ALJ that Plaintiff is capable of performing various jobs that exist in significant numbers in the national economy is supported by substantial evidence.

**IV.     Conclusion**

It is undeniable that Plaintiff has a number of impairments, and the Court is sympathetic and aware of the challenges that Plaintiff faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALJ and her conclusion that Plaintiff is not disabled within the meaning of the Social Security Act, and that she is able perform a wide range of light work, with restrictions.

For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA KAY NICHOLSON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 09-cv-1131 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER OF COURT

**AND NOW**, this 15th day of June, 2010, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that:

1. The Motion for Summary Judgment filed by Plaintiff, Donna Kay Nicholson (Document No. 9) is **DENIED**;

2. The Motion for Summary Judgment filed by Defendant, Michael J. Astrue, Commissioner of Social Security (Document No. 7) is **GRANTED**; and

3. The Clerk of Court will docket this case as closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: Gregory T. Kunkel, Esquire
Email: greg.kunkel@verizon.net

Paul Kovac, Assistant U.S. Attorney
Email: paul.kovac@usdoj.gov